## IN THE UNITED STATES EASTERN DISTRICT
## EASTERN DISTRICT OF MISSOURI

**TIMOTHY HAILL,**

     **PLAINTIFF.**

v.

**CITY OF ST. LOUIS,**
     1200 Market Street
     Saint Louis, MO 63103
Serve Registered Agent:
     City Counselor's Office
     1200 Market St. Room 314
     Saint Louis, MO 63103

     **DEFENDANT.**

**Case No.: 4:26-cv-00930**

## FIRST AMENDED COMPLAINT

COMES NOW Plaintiff Timothy Haill, by and through the undersigned counsel of record, and for his First Amended Complaint against Defendant City of St. Louis hereby states and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for race, age, disability discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000e *et seq.,* the Age Discrimination in Employment Act of 1967, the Americans with Disabilities Act against Defendant and the Missouri Human Rights Act for unlawfully discriminating against Plaintiff Timothy Haill in the terms and conditions of his employment on the basis of his race, age, and disability, and retaliating against him for reporting complaints and engaging in protected activity.

## THE PARTIES

1

2. Plaintiff Timothy Haill ("Plaintiff") resides in the State of Missouri.

3. Plaintiff is a former senior command staff member of the City of St. Louis Sheriff's Office, having served as Captain of Internal Affairs for over 10 years and with over 25 years of total service.

4. Defendant City of St. Louis is a governmental entity, in good standing, with its principal place of business conducted at its municipal offices in St. Louis, Missouri.

5. Defendant was the employer of Plaintiff during the time he was employed with the meaning of the Missouri Human Rights Act ("MHRA").

6. Defendant City of St. Louis directed and controlled the work of Plaintiff.

## JURISDICTION AND VENUE

7. Original jurisdiction over this suit is conferred on this Court by 28 U.S.C §§ 1331 as it is brought under as it is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 200e *et seq.* ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the Americans with Disabilities Act ("ADA") and the Missouri Human Rights Act, R.S.Mo. § 213.010, et seq.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices occurred in and around City of St. Louis, Missouri, and where Plaintiff suffered the unlawful employment practices and the resultant damages.

9. All conditions precedent to jurisdiction have occurred or been complied, in that Plaintiff filed his administrative charges in a timely manner with the Equal Employment Opportunity Commission ("EEOC").  Copies of the charges are attached hereto as Exhibit A.

2

10. The EEOC and U.S. Department of Justice, Civil Rights Division issued Plaintiff Notices of Right to Sue and this lawsuit is filed within ninety (90) days of issuance. Copies of the Notices of Right to Sue attached as Exhibit B and C.

11. The Missouri Commission on Human Rights also issued Plaintiff a Notice of Right to Sue and this lawsuit is filed within ninety (90) days of issuance. A copy of the Right to Sue is attached as Exhibit D.

## **GENERAL ALLEGATIONS**

12. Upon information and belief, at all times relevant, Defendant City of St. Louis, through its Sheriff's Office, was and continues to be operating as the chief law enforcement entity of the City of St. Louis, Missouri.

13. On September 20, 1999, Plaintiff was hired by the City of St. Louis Sheriff's Office.

14. Plaintiff continued his employment with the Sheriff's Office for over 25 years until his termination, serving in various departments including Transportation, Courtrooms, Security, and Jury Room.

15. Plaintiff was promoted to Senior Deputy in 2014 or 2015, to Sergeant in May 2017, to Lieutenant in December 2020, and to Captain of Internal Affairs in December 2022, where he remained until his termination.

16. Plaintiff maintained an exemplary employment record throughout his 25 years of service, never having been written up or reprimanded for any misconduct during his entire tenure.

17. Plaintiff had perfect attendance for most of his career until March 2024, when he underwent triple bypass surgery due to coronary artery disease.

3

18. In 2020, Plaintiff was recognized as "Supervisor of the Year" for his outstanding performance during the COVID-19 pandemic, maintaining perfect attendance while overseeing critical operations including the service of Orders of Protection.

19. Plaintiff suffers from diabetes and coronary artery disease, for which he underwent triple bypass surgery in March 2024. These conditions constitute disabilities under the Americans with Disabilities Act.

20. In July 2019, a new deputy sheriff Alfred Montgomery was hired by the City of St. Louis Sheriff's Office (hereinafter "Montgomery").

21. During Montgomery's employment, Montgomery violated departmental policies on multiple occasions, including posting courtroom photos on social media with "Montgomery for Sheriff" captions in violation of departmental social media policy.

22. In December 2019, Plaintiff, as Sergeant at that time, investigated Montgomery for violating departmental social media policy and other violations.

23. On December 4, 2019, Montgomery engaged in insubordinate conduct toward Sheriff Vernon Betts, repeatedly interrupting the Sheriff and refusing to follow direct orders during a meeting regarding social media policy violations.

24. On December 16, 2019, Montgomery was terminated from employment with the City of St. Louis Sheriff's Office for insubordination and other policy violations, following investigations and recommendations by Plaintiff.

25. Following his termination, Montgomery publicly stated he was terminated "for exercising my 1st amendment right" and vowed to hold those accountable for his termination, including threats to fire everyone involved in his termination, specifically including Plaintiff.

4

26. Montgomery began campaigning against Sheriff Betts and repeatedly threatened to fire supervisors who had been involved in his termination.

27. In August 2022, Plaintiff testified as a defense witness for Sheriff Vernon Betts in Case #222-CC00770, defending against a discrimination lawsuit filed by Deputy Yosef Yasharahla (also known as Joseph Mopkins).

28. Montgomery was present during the trial and made threats toward supervisors who testified for the defense, including Plaintiff.

29. Deputy Yasharahla lost the case and subsequently called the supervisors who testified, including Plaintiff, "racists" and vowed revenge.

30. In 2022, Plaintiff had investigated Yosef Yasharahla for sexual harassment of a co-worker, Shamira Smith, and was recommending suspension for failure to follow departmental orders. Sheriff Betts later dropped the investigation after firing Ms. Smith for other reasons.

31. During the 2024 campaign for Sheriff, Montgomery repeatedly made public statements announcing his agenda to terminate supervisors and deputies in order to "cut the budget," targeting senior command staff including Plaintiff.

32. On August 6, 2024, Montgomery won the election for Sheriff of the City of St. Louis, taking office on January 1, 2025.

33. On August 7, 2024, after winning the primary election for Sheriff, Montgomery began coming to the courthouse yelling that he was going to fire all "white shirt supervisors" (Lieutenants and above).

34. After November 5, 2024, Montgomery came to the courthouse almost daily making threats to supervisors that he was going to fire them and "couldn't wait until January 1st."

5

35. On November 15, 2024, at approximately 3:30 pm, Montgomery questioned Plaintiff in the courthouse lobby about why he was dressed in street clothes and about his attendance, demonstrating Montgomery's focus on Plaintiff's medical conditions and recovery from his triple bypass surgery.

36. Plaintiff's medical conditions required him to take medical leave and occasionally dress in street clothes when not on full duty status.

37. On December 4, 2024, Plaintiff was handed a termination letter by Captain Tammy Hogan (not in an envelope) that was dated December 6, 2024. The letter was not personally delivered by Montgomery but given to another supervisor to deliver to Plaintiff.

38. Plaintiff observed that Montgomery was calling out specific supervisors by name in the courthouse lobby, and it appeared only white supervisors were receiving termination letters.

39. Plaintiff recorded the incident on his cell phone, documenting Montgomery's actions in the lobby area.

40. Following the terminations, Deputy Yosef Yasharahla was promoted to Colonel by Montgomery and is currently second in command of the Sheriff's Office.

41. Plaintiff was replaced by Linda Mopkins, an African American female with no experience in Internal Affairs and no prior employment history with the Sheriff's Office, despite Plaintiff's 25 years of exemplary service and extensive experience as Captain of Internal Affairs.

42. Linda Mopkins is the wife of Colonel Yosef Yasharahla, the same individual whom Plaintiff had investigated for sexual harassment in 2022 and who had vowed revenge against Plaintiff after losing his discrimination lawsuit in 2022.

43. Plaintiff lost accumulated sick time, vacation time, pension benefits, health insurance, and was unable to work secondary employment which he had done for many years.

6

44. Following the terminations, the newly elected Sheriff gave media interviews describing the terminated employees as a "racist gang" running the office and made statements suggesting the terminations were motivated by personal retaliation rather than legitimate business reasons.

45. The termination was part of a systematic pattern of discrimination based on race, age, and disability, as well as retaliation for prior employment actions.

46. Plaintiff, by virtue of his race (white), age (55 years old), and disability (diabetes and coronary artery disease), is a member of classes of persons protected by law.

47. At all times relevant herein, the above-named individuals were agents, servants and employees of Defendant and were at all times acting within the scope and course of their agency and employment, or their actions were expressly authorized and ratified by Defendant. Therefore, Defendant is liable for the actions of said persons and/or perpetrators under all theories pled herein.

**<u>COUNT I:</u>**
**<u>Race Discrimination – Title VII</u>**
**<u>Against Defendant</u>**

48. Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

49. Plaintiff is white and therefore a member of a protected class under Title VII.

50. Defendant discriminated against Plaintiff in the terms and conditions of his employment.

51. Defendant's conduct constitutes intentional discrimination on the basis of race, with malice and disregard of Plaintiff's federally protected rights.

52. Defendant's conduct constitutes disparate treatment and intentional discrimination of Plaintiff based on race.

53. Sheriff-Elect Montgomery repeatedly stated his intention to fire all "white shirt supervisors" (Lieutenants and above), which was a reference to white supervisors in leadership positions.

54. Plaintiff observed that it appeared only white supervisors were receiving termination letters on December 4, 2024.

55. Plaintiff was replaced by Linda Mopkins, an African American female with no experience in Internal Affairs and no prior employment history with the Sheriff's Office, despite Plaintiff's 25 years of exemplary service and extensive experience as Captain of Internal Affairs.

56. The pattern of terminations demonstrates race discrimination, as less qualified African American employees were retained or promoted while more qualified white employees were terminated.

57. Plaintiff's race actually played a role in and had a determinative influence in Defendant City of St. Louis' disparate treatment of him and the tangible employment actions taken against him, to include his termination.

58. Plaintiff's race was, at the very least, a contributing factor in disparate treatment of him and the tangible employment actions taken against him by Defendant City of St. Louis, to include his termination.

59. Management level employees perpetuated the discrimination of Plaintiff based on Plaintiff's race.

60. In addition, management level employees knew or should have known of the discrimination based on Plaintiff's race but failed to address the discrimination and further failed to implement effective and appropriate procedures to stop the discrimination.

8

61. As a direct and proximate result of Defendant City of St. Louis' actions and/or omissions, Plaintiff suffered intentional discrimination – based upon his race – at the hands of Defendant City of St. Louis during the course of his employment.

62. As a direct and proximate result of Defendant City of St. Louis' actions and/or omissions, Plaintiff has been, and continues to be, deprived of monetary and non-monetary benefits.

63. As a direct and proximate result of Defendant City of St. Louis' actions and/or omissions, Plaintiff has suffered, and continues to suffer, garden variety emotional distress and other non-medical bill related compensatory damages.

64. By terminating Plaintiff based on his race, Defendant City of St. Louis, in effect, condoned, ratified, and/or authorized the race discrimination against Plaintiff.

65. The conduct of Defendant was intentional, malicious, in conscious disregard for the rights of Plaintiff and others similarly situated, and reflected a conscious indifference to Plaintiff's protected rights, entitling Plaintiff to an award of punitive damages.

66. Plaintiff is entitled to recover all of his costs, expenses, expert witness fees and attorneys' fees incurred in this matter as well as other appropriate, including equitable, relief.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant City of St. Louis for an award of compensatory and punitive damages, for his costs expended, for his reasonable attorneys' fees and for such other relief as this Court deems just and proper.

**COUNT II:**
**Age Discrimination – ADEA**
**Against Defendant**

67. Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

68. Plaintiff is 55 years old and is therefore a member of a protected class under the Age Discrimination in Employment Act of 1967.

69. Defendant discriminated against Plaintiff in the terms and conditions of his employment.

70. Defendant's conduct constitutes intentional discrimination on the basis of age, with malice and disregard of Plaintiff's rights.

71. Defendant's conduct constitutes disparate treatment and intentional discrimination of Plaintiff based on age.

72. During the course of Plaintiff's employment, Defendant City of St. Louis' agent, the newly elected Sheriff, made statements about eliminating "older supervisors" and "cutting the budget," which was a reference to the higher salaries earned by senior employees due to their years of service and experience.

73. Montgomery publicly stated his intention to fire "older supervisors" while converting budget savings to raises for "young, new deputies," demonstrating age-based animus.

74. The termination of Plaintiff, along with other senior command staff with years of service, while planning to hire younger employees with higher salaries, demonstrates a pattern of age discrimination.

75. Plaintiff's age actually played a role in and had a determinative influence in Defendant City of St. Louis' disparate treatment of him and the tangible employment actions taken against him, to include his termination.

76. Plaintiff's age was, at the very least, a contributing factor in disparate treatment of him and the tangible employment actions taken against him by Defendant City of St. Louis, to include his termination.

10

77. Management level employees perpetuated the discrimination of Plaintiff based on Plaintiff's age.

78. In addition, management level employees knew or should have known of the discrimination based on Plaintiff's age but failed to address the discrimination and further failed to implement effective and appropriate procedures to stop the discrimination.

79. As a direct and proximate result of Defendant City of St. Louis' actions and/or omissions, Plaintiff suffered intentional discrimination – based upon his age – at the hands of Defendant City of St. Louis during the course of his employment.

80. As a direct and proximate result of Defendant City of St. Louis' actions and/or omissions, Plaintiff has been, and continues to be, deprived of monetary and non-monetary benefits.

81. As a direct and proximate result of Defendant City of St. Louis' actions and/or omissions, Plaintiff has suffered, and continues to suffer, garden variety emotional distress and other non-medical bill related compensatory damages.

82. By terminating Plaintiff based on his age, Defendant City of St. Louis, in effect, condoned, ratified, and/or authorized the age discrimination against Plaintiff.

83. The conduct of Defendant was intentional, malicious, in conscious disregard for the rights of Plaintiff and others similarly situated, and reflected a conscious indifference to Plaintiff's protected rights, entitling Plaintiff to an award of punitive damages.

84. Plaintiff is entitled to recover all of his costs, expenses, expert witness fees and attorneys' fees incurred in this matter as well as other appropriate, including equitable, relief.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant City of St. Louis for an award of compensatory and punitive damages, for his costs expended, for his reasonable attorneys' fees and for such other relief as this Court deems just and proper.

11

## COUNT III:
## Disability Discrimination – ADA
## Against Defendant

85. Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

86. Plaintiff suffers from diabetes and coronary artery disease, for which he underwent triple bypass surgery in March 2024. These conditions constitute disabilities under the ADA.

87. Defendant discriminated against Plaintiff in the terms and conditions of his employment.

88. Defendant's conduct constitutes intentional discrimination on the basis of disability/perceived disability, with malice and disregard of Plaintiff's rights.

89. Plaintiff's medical conditions required him to take medical leave and occasionally dress in street clothes when not on full duty status.

90. On November 15, 2024, Montgomery questioned Plaintiff about his attendance and why he was dressed in street clothes, demonstrating Montgomery's focus on Plaintiff's medical conditions and disabilities.

91. The timing of Plaintiff's termination—occurring shortly after his return from major surgery and while still recovering—demonstrates a direct causal connection between his protected medical condition and his discharge.

92. Defendant City of St. Louis, through its agents and employees, failed to engage in any interactive process, failed to accommodate Plaintiff's medical conditions, and instead terminated his employment because of his disabilities and/or perceived disabilities.

93. Plaintiff's disability/perceived disability was a factor in the discriminatory conduct he experienced and suffered.

12

94. Plaintiff's terms and conditions of employment were adversely affected as a result of Defendant's conduct.

95. Defendant's conduct caused Plaintiff degradation, humiliation, anxiety, and emotional distress.

96. The conduct described herein would have detrimentally affected a reasonable person in Plaintiff's position.

97. Management level employees perpetuated the discrimination of Plaintiff based on Plaintiff's disability/perceived disability.

98. In addition, management level employees knew or should have known of the discrimination based on Plaintiff's disability/perceived disability but failed to address the discrimination and further failed to implement effective and appropriate procedures to stop the discrimination.

99. Defendant City of St. Louis' conduct constitutes unlawful discrimination based on disability, in violation of the ADA.

100. As a direct and proximate result of Defendant City of St. Louis' discriminatory acts and omissions, Plaintiff has suffered and continues to suffer lost wages, lost benefits, emotional distress, humiliation, and other compensatory damages.

101. By terminating Plaintiff due to his disabilities, Defendant City of St. Louis has condoned, ratified, and/or authorized disability discrimination in violation of federal law.

102. The conduct of Defendant was intentional, malicious, in conscious disregard for the rights of Plaintiff and others similarly situated, and reflected a conscious indifference to Plaintiff's protected rights, entitling Plaintiff to an award of punitive damages.

103. Plaintiff is entitled to recover all of his costs, expenses, expert witness fees and attorneys' fees incurred in this matter as well as other appropriate, including equitable, relief.

13

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant City of St. Louis for an award of compensatory and punitive damages, for his costs expended, for his reasonable attorneys' fees and for such other relief as this Court deems just and proper.


**COUNT IV:**
**Retaliation – Title VII**
**Against Defendant**

104. Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

105. Plaintiff engaged in protected activity by investigating Montgomery as Captain of Internal Affairs and recommending his termination in December 2019.

106. Plaintiff engaged in protected activity by testifying as a defense witness for Sheriff Vernon Betts in August 2022 in Case #222-CC00770 against Deputy Yosef Yasharahla.

107. Plaintiff engaged in protected activity by investigating Yosef Yasharahla for sexual harassment in 2022.

108. Montgomery, upon assuming office as Sheriff, engaged in systematic retaliation against Plaintiff for his involvement in Montgomery's prior termination.

109. The newly elected Sheriff made repeated public statements promising retaliation against those involved in his prior employment termination, specifically including Plaintiff.

110. The promotion of Yosef Yasharahla to Colonel (second in command) and the appointment of his wife Linda Mopkins to replace Plaintiff demonstrates a pattern of retaliation against Plaintiff for his prior protected activities.

14

111. The timing and circumstances of Plaintiff's termination demonstrate a clear causal connection between his protected activities and the adverse employment action taken against him.

112. Plaintiff's protected activities actually played a role in and had a determinative influence in Defendant City of St. Louis' adverse employment actions against him.

113. Plaintiff's protected activities were, at the very least, a contributing factor in Defendant City of St. Louis' adverse employment actions against him.

114. Plaintiff suffered adverse employment action in that he was terminated from employment after he engaged in protected activities.

115. Management level employees perpetuated the retaliation against Plaintiff.

116. In addition, management level employees knew or should have known of the retaliation against Plaintiff, but failed to address the retaliation and further failed to implement effective and appropriate procedures to stop said retaliation.

117. There is a causal connection between Plaintiff's exercise of protected activity and his termination.

118. As a direct and proximate result of Defendant City of St. Louis' retaliatory actions, Plaintiff has suffered and continues to suffer lost wages, lost benefits, emotional distress, humiliation, and other compensatory damages.

119. By terminating Plaintiff in retaliation for engaging in protected activities, Defendant City of St. Louis has condoned, ratified, and/or authorized unlawful retaliation in violation of federal law.

15

120. The conduct of Defendant was intentional, malicious, in conscious disregard for the rights of Plaintiff and others similarly situated, and reflected a conscious indifference to Plaintiff's protected rights, entitling Plaintiff to an award of punitive damages.

121. Plaintiff is entitled to recover all of his costs, expenses, and attorneys' fees incurred in this matter as well as other appropriate, including equitable relief.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant City of St. Louis for an award of compensatory and punitive damages, for his costs expended, for his reasonable attorneys' fees and for such other relief as this Court deems just and proper.

**COUNT V:**
**Violation of the Missouri Human Rights Act – Race Discrimination**
**R.S.Mo. § 213.010, *et seq*. Against Defendant**

122. Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

123. The actions of Defendant constitute unwelcome and discriminatory conduct.

124. Plaintiff's race was a factor in the discriminatory conduct he experienced and suffered.

125. The discriminatory conduct included, but was not limited to, the targeted termination of white supervisors, Montgomery's repeated statements about firing "white shirt supervisors," and the replacement of Plaintiff with a less qualified individual, as described herein.

126. Plaintiff's terms and conditions of employment were adversely affected as a result of Defendant's conduct.

127. Defendant's conduct caused Plaintiff degradation, humiliation, anxiety, and emotional distress.

16

128. The conduct described herein would have detrimentally affected a reasonable person in Plaintiff's position.

129. Management level employees perpetuated the discrimination based on Plaintiff's race.

130. In addition, management level employees knew or should have known of the discrimination based on Plaintiff's race but failed to address the discrimination and further failed to implement effective and appropriate procedures to stop the discrimination.

131. The actions and conduct set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant to punish and deter Defendant and others from like conduct.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant City of St. Louis, for a finding that he has been subjected to unlawful discrimination as prohibited by R.S.Mo. § 213.010 et seq.; for an award of compensatory and punitive damages, for his costs expended, for his reasonable attorneys' fees and for such other relief as this Court deems just and proper.

**COUNT VI:**
**Violation of the Missouri Human Rights Act – Age Discrimination**
**R.S.Mo. § 213.010, *et seq*. Against Defendant**

132. Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

133. The actions of Defendant constitute unwelcome and discriminatory conduct.

134. Plaintiff's age was a factor in the discriminatory conduct he experienced and suffered.

17

135. The discriminatory conduct included, but was not limited to, the targeted termination of senior, long-serving employees based on their years of service and age, and Montgomery's statements about eliminating "older supervisors" to "cut the budget," as described herein.

136. Plaintiff's terms and conditions of employment were adversely affected as a result of Defendant's conduct.

137. Defendant's conduct caused Plaintiff degradation, humiliation, anxiety, and emotional distress.

138. The conduct described herein would have detrimentally affected a reasonable person in Plaintiff's position.

139. Management level employees perpetuated the discrimination based on Plaintiff's age.

140. In addition, management level employees knew or should have known of the discrimination based on Plaintiff's age but failed to address the discrimination and further failed to implement effective and appropriate procedures to stop the discrimination.

141. The actions and conduct set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant to punish and deter Defendant and others from like conduct.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant City of St. Louis, for a finding that he has been subjected to unlawful discrimination as prohibited by R.S.Mo. § 213.010 et seq.; for an award of compensatory and punitive damages, for his costs expended, for his reasonable attorneys' fees and for such other relief as this Court deems just and proper.

**COUNT VII:**
**Violation of the Missouri Human Rights Act – Disability Discrimination**

18

**R.S.Mo. § 213.010, *et seq*. Against Defendant**

142. Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

143. The actions of Defendant constitute unwelcome and discriminatory conduct.

144. Plaintiff's disability/perceived disability was a factor in the discriminatory conduct he experienced and suffered.

145. The discriminatory conduct included, but was not limited to, the termination of Plaintiff shortly after his return from triple bypass surgery and while still recovering from his medical conditions, and Montgomery's questioning of Plaintiff regarding his attendance and medical status, as described herein.

146. Plaintiff's terms and conditions of employment were adversely affected as a result of Defendant's conduct.

147. Defendant's conduct caused Plaintiff degradation, humiliation, anxiety, and emotional distress.

148. The conduct described herein would have detrimentally affected a reasonable person in Plaintiff's position.

149. Management level employees perpetuated the discrimination based on Plaintiff's disability/perceived disability.

150. In addition, management level employees knew or should have known of the discrimination based on Plaintiff's disability/perceived disability but failed to address the discrimination and further failed to implement effective and appropriate procedures to stop the discrimination.

151. The actions and conduct set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and therefore Plaintiff is

19

entitled to punitive damages from Defendant to punish and deter Defendant and others from like conduct.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant City of St. Louis, for a finding that he has been subjected to unlawful discrimination as prohibited by R.S.Mo. § 213.010 et seq.; for an award of compensatory and punitive damages, for his costs expended, for his reasonable attorneys' fees and for such other relief as this Court deems just and proper.

## COUNT VIII:
### Violation of the Missouri Human Rights Act – Retaliation
### Against Defendant

152. Plaintiff reasserts the allegations set forth in the preceding paragraphs as if fully set forth herein.

153. Defendant's conduct included, but was not limited to, terminating Plaintiff's employment after he engaged in protected activities, including investigating Montgomery and recommending his termination, testifying for the defense in Case #222-CC00770, and investigating Yosef Yasharahla for sexual harassment.

154. Plaintiff's terms and conditions of employment were adversely affected as a result of Defendant's conduct.

155. Defendant's conduct caused Plaintiff degradation, humiliation, anxiety and emotional distress.

156. The conduct described herein would have detrimentally affected a reasonable person in Plaintiff's position.

157. As a proximate result of Defendant's acts as aforesaid, Plaintiff was retaliated against and has suffered termination of his employment.

20

158. Management level employees perpetuated the retaliation against Plaintiff.

159. In addition, management level employees knew or should have known of the retaliation against Plaintiff, but failed to address the retaliation and further failed to implement effective and appropriate procedures to stop said retaliation.

160. The actions and conduct set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Plaintiff and therefore Plaintiff is entitled to punitive damages from Defendant to punish and deter Defendant and others from like conduct.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant City of St. Louis, for a finding that he has been subjected to unlawful retaliation as prohibited by Mo.Rev.Stat. 213.010 et seq., for an award of compensatory and punitive damages, for his costs expended, for his reasonable attorneys' fees and for such other relief as this Court deems just and proper.

**COUNT IX – HOSTILE WORK ENVIRONMENT IN VIOLATION**
**of RSMo. § 213.010 *et seq.***
**Against Defendant**

161. Plaintiff incorporates and adopts by reference the preceding paragraphs as though fully set forth herein.

162. During Plaintiff's employment with Defendant, Defendant subjected Plaintiff to outrageous, extreme, atrocious, intolerable, severe and unwelcomed conduct based on Plaintiff's race, age, disability/perceived disability and subsequent retaliation.

163. At all times relevant herein, Defendant's discrimination against Plaintiff based on Plaintiff's race, age, and disability/perceived disability was outrageous, extreme, atrocious, intolerable, severe, unwelcomed, and objected to by Plaintiff.

164. Defendant's discriminatory conduct against Plaintiff based on Plaintiff's race, age, and disability/perceived disability was sufficiently outrageous, extreme, atrocious, intolerable, severe, and pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile and/or abusive.

165. Plaintiff's race, age, and disability/perceived disability was a motivating factor in Defendant's actions toward and adverse employment decisions relating to Plaintiff.

166. Defendant's actions toward and adverse employment decisions relating to Plaintiff had the purpose and effect of unreasonably interfering with Plaintiff's ability to perform his job and duties.

167. Defendant knew or should have known of the outrageous, extreme, atrocious, intolerable, severe, pervasive, discriminatory conduct against Plaintiff based on Plaintiff's race, age, and disability/perceived disability, as Plaintiff expressed his concerns of said conduct to Defendant.

168. Defendant failed to exercise reasonable care to prevent and/or promptly correct the outrageous, extreme, atrocious, intolerable, severe, and pervasive conduct by Defendant, including but not limited to, one or both of the following: a. Failing to make good-faith efforts to establish and enforce policies to prevent illegal discrimination against its employees through race, age, disability and/or retaliation; and/or b. Failing to properly train and/or otherwise inform their supervisors and employees concerning their duties and obligations under civil rights laws, including the Missouri Human Rights Act.

22

169. Plaintiff's race, age, and disability/perceived disability, when repeatedly reporting the discrimination and harassment against Plaintiff by Defendant, including but not limited to, through Defendant's agents, owners, supervisors and/or employees, actually played a role and was a determinative influence in disparate treatment of Plaintiff and the tangible employment actions taken against him by Defendant.

170. Through Defendant's conduct, as described herein, Defendant violated RSMo. § 213.055.

171. As a direct and proximate result of Defendant's outrageous, extreme, atrocious, and intolerable conduct and/or omissions, as outlined herein, and, in violation of RSMo. § 213.055, Plaintiff suffered intentional discrimination at the hands of and by Defendant during the course of his employment with Defendant.

172. As a direct and proximate result of Defendant's outrageous, extreme, atrocious, and intolerable conduct and/or omissions, as outlined herein, Plaintiff has been, and continues to suffer monetary and non-monetary damages.

173. As a direct and proximate result of Defendant's outrageous, extreme, atrocious, and intolerable conduct and/or omissions, Plaintiff has and continues to suffer, garden variety emotional distress and other compensatory damages.

174. By failing to take prompt and effective remedial action, Defendant effectively condoned, ratified, authorized, aided, abetted, incited, compelled, and/or coerced and/or attempted to do so the discrimination against Plaintiff based on Plaintiff's race, age, and disability/perceived disability and retaliation against Plaintiff.

175. Defendant's outrageous, extreme, atrocious, severe, and intolerable conduct was willful, wanton, and malicious and showed complete indifference to and/or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in

23

an amount sufficient to punish Defendant and/or to deter them and others from like conduct in the future, as provided for under law.

176. Plaintiff is entitled to recover reasonable attorneys' fees from Defendant, as provided for under the MHRA.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendant City of St. Louis, for a finding that he has been subjected to a hostile work environment as prohibited by Mo.Rev.Stat. 213.010 et seq., for an award of compensatory and punitive damages, for his costs expended, for his reasonable attorneys' fees and for such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests trial by jury of all issues triable by jury.

Respectfully submitted,

**JUNGLE LAW**

By: */s/ Lauren Sierra Kruskall*
Lauren S. Kruskall #70464
100 S. 4th Street, Suite 550
Saint Louis, Missouri 63102
Tel:314/314-9111
Fax:816/448-3101
lauren@junglelaw.com


and

**LAUREN ALLEN, LLC**

By: */s/ Lauren Perkins Allen*
Lauren Perkins Allen, #49845MO
P.O. Box 8533
Prairie Village, Kansas 66208
Telephone: 816.877.8120
Facsimile: 816.817.1120

24

25

Email:  lpa@laurenallenllc.com

**ATTORNEYS FOR PLAINTIFF**